UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN W. TAYLOR, IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01985-JPH-TAB |
| | ) | |
| JOHN MANNING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT MANNING'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff John W. Taylor, IV, pursues Eighth Amendment deliberate indifference claims against four defendants, including Nurse John Manning, for alleged inadequate treatment of Mr. Taylor's smoke inhalation at Wabash Valley Correctional Facility. *See* dkt. 2.

Nurse Manning seeks summary judgment, arguing that Mr. Taylor failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (the "PLRA") before his filing this lawsuit. Dkt. 53. After Mr. Taylor responded and Nurse Manning filed a reply, Mr. Taylor filed two additional responses. Dkts. 60, 61. Nurse Manning has moved to strike the second of those responses or, alternatively, has filed an additional reply. Dkt. 62. That motion is **granted** to the extent that the Court considers dockets 60, 61, and 62 with the summary judgment briefing. For the reasons below, Nurse Manning's motion for summary judgment, dkt. 53, is **denied**.

## I.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered

undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. Factual Background

Because Nurse Manning has moved for summary judgment under Fed. R. Civ. P. 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. Allegations

Mr. Taylor alleges that a fire occurred at Wabash Valley in the cell next to his on December 3, 2023, causing black smoke to pour into his cell and Mr. Taylor to suffer smoke inhalation. Dkt. 2 at 4–5. Mr. Taylor was moved to an outdoor recreation area. *Id.* at 6. Medical staff, including Nurse Manning, took "a couple of hours" to treat Mr. Taylor after he requested to be seen. *Id.* at 5–6. He complained that his throat, eyes, and lungs burned, but the medical device to test Mr. Taylor's oxygen levels malfunctioned due to the low temperature. *Id.* at 6. After an hour, he was returned to his cell, where he again requested to see medical staff. *Id.* Mr. Taylor was told to fill out a health care form. *Id.*

On December 3 or 4, Mr. Taylor filed three grievances, two about the fire incident. *Id.*; dkt. 58 at 1. After receiving no responses, Mr. Taylor inquired and was told that those grievances were never received. Dkt. 2 at 6. Six days after the incident, medical staff again examined Mr. Taylor. *Id.* He did not receive any meaningful treatment. *Id.* He was transferred to a new facility "days later[.]" *Id.*

**B. Grievance Procedure**

The Indiana Department of Correction ("IDOC") maintains an offender grievance program at Wabash Valley. Dkt. 54-2 at ¶ 5; dkt. 54-2 at 9–23. The program includes three steps:

1. A formal attempt to solve a problem or concern following unsuccessful attempts at informal resolutions;
2. A written appeal to the Warden/designee; and,
3. A written appeal to the Department Grievance Manager.

Dkt. 54-2 at 11.

The first step requires an inmate to "submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident giving rise to the complaint or concern to the Offender Grievance Specialist." *Id.* at 17. The grievance specialist will either return an unacceptable form or provide a receipt of an accepted grievance within ten business days of receipt. *Id.* If an inmate does not receive either a return or receipt within ten days of submission, he shall notify the grievance specialist and retain a copy of the notice. *Id.* The grievance specialist shall investigate and respond to the notice within ten days. *Id.*

If an inmate does not receive a grievance response within twenty days of the grievance specialist's receipt of the grievance, he "may appeal as though the grievance has been denied." *Id.* at 20.

When an inmate is transferred to a new facility, the Wabash Valley grievance department forwards his unreceived grievance mail, including grievance responses, by e-mail to the new facility. Dkt. 59-1 at ¶¶ 6–7.

### C. Grievances

Mr. Taylor filed two grievances on December 3 or 4 about the December 3 incident and inadequate medical treatment. Dkt. 58 at 1. On December 11, 2023, Mr. Taylor filed grievance no. 23-165888, which reads:

> WVCF officials are interfering with the exhaustion of my admin. remedies (grievance process). On 12/3/23 I filed grievances about my exposure to smoke & lack of medical treatment. To date I have not received my grievance copies back.
> Failure of a prison official to respond to a grievance makes the remedy unavailable. *See Dole v. Chandler*, 438 F.3d 804.
> If my grievances are not processed I will proceed with my litigation, as WVCF officials would have essentially made the grievance process unavailable.

Dkt. 54-2 at 32.

The facility's December 13 response read, "Return - I have reviewed your files, and I never received a grievance like the one you are stating you turned in. You may resubmit." *Id.* at 31. Mr. Taylor was transferred to Miami Correctional Facility on December 15, 2023. *Id.* at 6 ¶ 32. Mr. Taylor did not receive Wabash Valley's grievance response, dkt. 58 at 2, and there is no designated evidence of Mr. Taylor resubmitting a grievance. *Id.*

## III.
## Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532

(2002). "To exhaust available [administrative] remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

The Seventh Circuit "has taken a strict approach to exhaustion." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the State establishes, at least as long as it is actually available to the inmate." *Id.*; *see Ross v. Blake*, 578 U.S. 632, 638-39 (2016) (the mandatory language of the PLRA "means a court may not excuse a failure to exhaust"). An administrative procedure is unavailable when (1) the process operates as a "simple dead end," (2) when it is so opaque that it is incapable of use, or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643−44.

Here, Mr. Taylor argues that the grievance process was unavailable to him because he never received a response to his initial formal grievances. Dkt. 57 at 2–3. Nurse Manning contends that the grievance process was available to Mr. Taylor because he could have resubmitted the grievances. Dkt. 55 at 13–15.

Mr. Taylor has designated evidence that he submitted two grievances about the lack of medical care after the fire, but never received responses to them. Dkt. 58 at 1–2. That is generally enough to show that the grievance process was unavailable. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance."). "And because failure to exhaust is an affirmative defense . . . [t]he burdens of production and persuasion rest on the defendants" to show availability. *Ingram v. Watson*, 67 F.4th 866, 870 (7th Cir. 2023).

Nurse Manning attempts to meet his burden to show that the process was available by arguing that the Grievance Specialist told Mr. Taylor that his grievances were never received so he "may resubmit." Dkt. 54-1 at 3. Mr. Taylor, however, was transferred from Wabash Valley to Miami two days after that response was issued. *See* dkt. 54-2 at 6–7. Nurse Manning has designated evidence that such a response would typically be delivered to Mr. Taylor within one day, and that if Mr. Taylor did not receive it before his transfer, it should've been forwarded to him at Miami. Dkt. 59-1 at 1–2. But Mr. Taylor has designated contrary evidence that he "never received any correspondence from Wabash Valley's grievance office regarding my grievances." Dkt. 58 at 2.

Nurse Manning argues that this sworn statement from Mr. Taylor should be disregarded because it contradicts his verified complaint, where Mr. Taylor said that he "was told [that his initial grievances] were never received." Dkt. 55 at 11–12 (citing dkt. 2 at 5–6). While Mr. Taylor's complaint includes a "verification," it does not say that it is signed under penalty of perjury. *See* dkt.

2 at 8; *Golat v. Skwierawski*, 184 F.4th 938, 950 n.18 (7th Cir. 2026) ("Verified complaints must comply with 28 U.S.C. § 1746, which requires that the declarant use specific language" including "under penalty of perjury."). Regardless, any conflict between the complaint and Mr. Taylor's subsequent affidavit does not require that the affidavit be disregarded. His complaint does not identify who told him that he was told his grievances were never received and that statement, even if accepted, does not foreclose his assertion that he did not receive the invitation to resubmit them. *See Burns v. Polk*, --- F.4th ----, 2026 WL 2409723 at *5 (7th Cir. Aug. 18, 2026) (reversing exhaustion summary judgment because "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" without a *Pavey* hearing).

Finally, Nurse Manning briefly argues that Mr. Taylor should have resubmitted the grievances or filed an appeal even if he never received any response from Wabash Valley's grievance specialist. Dkt. 55 at 14–15. He designates no evidence, however, that Wabash Valley's grievance process was available to Mr. Taylor from Miami after his transfer. *See id.*; *Ingram*, 67 F.4th 866 at 870 ("The burdens of production and persuasion rest on the defendants."); *cf. King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) (reversing summary judgment on exhaustion because "the defendants did not show" that the "jail's administrative remedy was . . . available to transferred prisoners").

The availability of Mr. Taylor's administrative remedies therefore turns on disputed facts that cannot be resolved at summary judgment. *See Jackson v.*

*Esser*, 105 F.4th 948, 957 (7th Cir. 2024) ("If, however, a prisoner raises sufficient factual allegations demonstrating a genuine dispute as to whether the administrative remedies were available to him, a court must conduct an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to resolve the dispute.").

## IV. Conclusion

Nurse Manning's motion for summary judgment, dkt. [53], is **denied**. His motion regarding Mr. Taylor's supplemental response, dkt. [62], is **granted** to the extent that the Court has considered Nurse Manning's rebuttal argument as well.

Nurse Manning shall file a notice informing the Court whether he wishes to withdraw his exhaustion defense or proceed to a *Pavey* hearing **by October 16, 2026**.

**SO ORDERED.**

Date: 9/23/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOHN W. TAYLOR, IV
167117
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel